IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-381-D

WILLIAM R. HARRIS, individually )
and as administrator of the estate of )
Christine Alease Harris, )
)
                Plaintiff, )      **ORDER**
)
v. )
)
JONATHAN RAMON FAMBRO, et al., )
)
                Defendants. )

On September 22, 2022, William R. Harris ("Harris" or "plaintiff"), individually and as administrator of the estate of Christine Alease Harris ("Christine"), filed a complaint against the City of Fayetteville ("the City"), the Fayetteville Police Department ("FPD"), two of its law enforcement officers, Jonathan Ramon Fambro ("Fambro"), in his official and individual capacity, and Christopher Biggerstaff ("Biggerstaff"), in his official and individual capacity, and NC Special Police LLC ("NCSP"). See [D.E. 1]. On October 6, 2022, Harris amended his complaint. See Am. Compl. [D.E. 8]. Harris asserts substantive and procedural due process claims under 42 U.S.C. § 1983 against Biggerstaff, the City, and the FPD and state law tort claims against all defendants, all arising out of Christine's death on July 1, 2022. See id. at ¶¶ 1, 72–105. Harris seeks monetary damages, declaratory relief, and injunctive relief. See id. at 27.

On November 7, 2023, the City, Biggerstaff, and the FPD ("the moving defendants") moved to dismiss plaintiff's claims. See [D.E. 44]. On November 28, 2023, Harris responded in

opposition [D.E. 47].¹ On December 11, 2023, the moving defendants replied [D.E. 49]. On December 15, 2023, the court stayed discovery pending a ruling on the motion to dismiss [D.E. 53]. As explained below, the court grants the moving defendants' motion to dismiss.

I.

"At approximately 6:20 p.m. on September 22, 2020, . . . Christine . . . was traveling to the Church of Christ," in Fayetteville, North Carolina, "to assist a family friend in preparing a eulogy for a deceased fellow church member" when Fambro "suddenly appeared, and collided into the passenger side" of Christine's vehicle "at an estimated speed of [75] miles per hour." Am. Compl. ¶¶ 29–31. Christine's seatbelt snapped, she was ejected from her vehicle, and she "died in transport to a local hospital." Id. at ¶¶ 33–34.

At the time of the collision, Fambro was a sworn law enforcement officer with NCSP, "a law enforcement agency, acting under the color of State law, pursuant to the powers and authority granted to it pursuant to the North Carolina General Statutes." Id. at ¶¶ 6, 9. Biggerstaff also was a sworn law enforcement officer with the FPD and "responded to the scene of the collision . . . to 'investigate' the collision pursuant to his role as a fatal accident investigator." Id. at ¶¶ 10, 38. Harris alleges that "Biggerstaff either knew or was informed that [Fambro] was a fellow law enforcement officer and immediately set in motion a scheme, design, and plan to ignore and conceal evidence related to [Fambro's] criminal conduct in connection with the fatal collision and to shield and protect [Fambro] from prosecution." Id. at ¶ 39; see id. at ¶¶ 40–41, 50, 55, 59, 69, 71.

---

¹ "Plaintiff does not oppose the . . . Motion to Dismiss Defendant 'The Fayetteville Police Department' from this action." [D.E. 47] 2 n.1. Accordingly, the court dismisses the FPD.

2

Following Christine's death, Harris's legal counsel repeatedly contacted Biggerstaff about the investigation. See id. at ¶¶ 42–44, 47–49. Harris alleges that Biggerstaff and other defendants "persistently failed to provide any reasonable and relevant information to [Harris] in connection with the prosecution of [Fambro]" in violation of Article 37 of the North Carolina Constitution and North Carolina's Crime Victims' Rights Act, N.C. Gen. Stat. §§ 15a–830 et seq. ("CVRA") which "prevented him from seeking other administrative remedies." Id. at ¶¶ 51, 56. Instead, Harris "learned through court records that [Fambro's] speeding ticket and reckless driving/wanton disregard charges in connection with the September 22, 2020 fatal collision were consolidated with" two other speeding tickets "and that all such charges were dismissed during a February 4, 2021 session of the Cumberland County traffic court," even though "the September 22, 2020 fatal collision met all elements of the crime of misdemeanor death by motor vehicle and should have resulted in the prosecution of [Fambro] in connection with the killing of Christine." Id. at ¶¶ 54, 58.

Count one of the amended complaint contends that the moving defendants' inadequate criminal investigation into Christine's death violated Harris's "rights under the North Carolina Constitution, the [CVRA], and the substantive and procedural due process rights guaranteed to [Harris] by the United States Constitution." Am. Compl. ¶ 74. Counts three through five assert state law claims for obstruction of justice, intentional infliction of emotional distress,[2] and civil conspiracy. Id. at ¶¶ 89–105.

---

[2] The court construes plaintiff's claim for "Reckless/Intentional Infliction of Emotional Distress," Am. Compl. 26, as one for intentional infliction of emotional distress. See Bumpass v. Birkhead, No. 1:21CV394, 2022 WL 943727, at *15 (M.D.N.C. Feb. 28, 2022) (unpublished), report and recommendation adopted, 2022 WL 939845 (M.D.N.C. Mar. 29, 2022) (unpublished).

3

## II.

### A.

The moving defendants argue that Harris lacks standing "because (i) the two statutes which generally allow [Harris] to bring claims as the administrator of [Christine]'s estate do not apply here; and (ii) private citizens do not have standing to challenge the criminal investigation or prosecution of another." [D.E. 45] 7. A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., White Tail Park, Inc. v. Stroube, 413 F.3d 451, 479 (4th Cir. 2005); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). "[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

A court considers the law of the state where the individual is domiciled or where the district court is located in order to determine capacity to sue. See Fed. R. Civ. P. 17(b); Brown v. Town

4

Case 5:22-cv-00381-D-RN   Document 54   Filed 02/21/24   Page 4 of 12

of Cary, 706 F.3d 294, 299 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015); cf. Howard v. City of Durham, 68 F.4th 934, 947 (4th Cir. 2023). North Carolina law recognizes two types of claims which survive a person's death: survival claims, which "are brought after death for injuries sustained before death and inure to the benefit of the estate," and wrongful death claims, which "provide[] relief where a defendant's actions cause injury proximately resulting in the decedent's death, with all recovery inuring to the benefit of decedent's heirs as provided for by North Carolina's Intestate Succession Act." Sparks v. Oxy-Health, LLC, 134 F. Supp. 3d 961, 969 n.3 (E.D.N.C. 2015) (citations omitted).

The moving defendants did not cause Christine's death, and "[a]ll of the alleged investigative [and other] conduct identified in the [c]omplaint as the impetus for the claims against the [moving d]efendants . . . occurred after [Christine]'s death." Wattley v. City of Charlotte, No. 3:20-CV-426, 2021 WL 1226552, at *3 (W.D.N.C. Mar. 31, 2021) (unpublished). Additionally, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); see Smith v. McCarthy, 349 F. App'x 851, 859 n.12 (4th Cir. 2009) (per curiam) (unpublished); Wattley, 2021 WL 1226552, at *4. Thus, Harris's claims against the moving defendants fail.

B.

Alternatively, to the extent Harris has standing to assert any claims on his own behalf against the moving defendants, they argue that Harris fails to state a claim. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554– 63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading

5

"must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

1.

Count one asserts violations of Harris's "substantive and procedural due process rights

6

guaranteed to [Harris] by the United States Constitution" under 42 U.S.C. § 1983. Am. Compl. ¶ 74. "To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Harris has failed to plausibly allege a due process violation. See Smith, 349 F. App'x at 859; Bumpass, 2022 WL 943727, at *10–11; Johnson v. Raleigh Police Dep't, No. 5:19-CV-31, 2019 WL 4691619, at *3 (E.D.N.C. Aug. 8, 2019) (unpublished), report and recommendation adopted, 2019 WL 4687112 (E.D.N.C. Sept. 25, 2019) (unpublished); Hoffman v. Tanner, No. CV 9:18-1146, 2018 WL 6933405, at *6 (D.S.C. Dec. 4, 2018) (unpublished), report and recommendation adopted, 2018 WL 6787442 (D.S.C. Dec. 26, 2018) (unpublished), aff'd, 770 F. App'x 54 (4th Cir. 2019) (per curiam) (unpublished). Harris has also failed to plausibly allege that any municipal policy or custom attributable to the City caused the violation of his constitutional rights. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); City of St. Louis v. Praprotnik, 485 U.S. 112, 124–25 (1988); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; Howard, 68 F.4th at 952; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Wright v. Hertford Cnty. Bd. of Educ., No. 2:23-CV-30, 2024 WL 85926, at *3–4 (E.D.N.C. Jan. 8, 2024) (unpublished); Kennedy v. Rowe, No. 5:23-CV-264, 2023 WL 6612437, at *2–3 (E.D.N.C. Oct. 10, 2023) (unpublished); Fogg v. U.S.A. Transp. Sec.

7

Admin., No. 5:22-CV-124, 2023 WL 3635622, at *3–4 (E.D.N.C. May 24, 2023) (unpublished); Bumpass, 2022 WL 943727, at *12; Hoffman, 2018 WL 6933405, at *6 n.8. To the extent Harris asserts violations of either the CVRA or Article 1, Section 37 of the North Carolina Constitution, see Am. Compl. ¶¶ 74–75, 78, they do not "create a claim for damages against the State, any county or municipality, or any State or county agencies, instrumentalities, officers, or employees," and the CVRA is not judicially enforceable in federal court. N.C. Gen. Stat. §§ 15A–830.5(c), 15A–839; see N.C. Const. art. I, § 37(2); N.C. Gen. Stat. § 15A–834.5; Corum v. Univ. of N.C., 330 N.C. 761, 782, 789, 413 S.E.2d 276, 289, 293 (1992); cf. May v. Univ. Health Sys. of E. Carolina, Inc., No. 4:21-CV-00014, 2021 WL 5868135, at *10 n.6 (E.D.N.C. Dec. 9, 2021) (unpublished). Accordingly, the court grants the moving defendants' motion to dismiss count one of the amended complaint.

2.

The City and Biggerstaff in his official capacity argue that governmental immunity bars counts three through five of the amended complaint against them and Harris's official-capacity claims against Biggerstaff duplicate his claims against the City. See Mem. Supp. Mot. Dismiss 21–27. Under North Carolina law, "[g]overnmental immunity is that portion of the [s]tate's sovereign immunity which extends to local governments." Wray v. City of Greensboro, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). "Generally, governmental immunity protects a municipality and its officers or employees sued in their official capacity for torts committed while performing a governmental function." Sellers v. Rodriguez, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002); see Galligan v. Town of Chapel Hill, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970).

Generally, governmental immunity bars tort lawsuits against the governmental entity absent waiver. See Wray, 370 N.C. at 47, 802 S.E.2d at 898; Meyer v. Walls, 347 N.C. 97, 104,

8

489 S.E.2d 880, 884 (1997). A county or town may waive governmental immunity by purchasing insurance, but any waiver is limited to the extent of the insurance coverage. See, e.g., N.C. Gen. Stat. §153A-435(a); Evans v. Hous. Auth., 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004); Satorre v. New Hanover Cnty. Bd. of Comm'rs, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). If "the insurance policy does not indemnify [the] defendant against the negligent acts alleged in [the] plaintiff's complaint, [the] defendant has not waived its sovereign immunity." Doe v. Jenkins, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001); see Dawes v. Nash Cnty., 357 N.C. 442, 445–46, 449, 584 S.E.2d 760, 763, 765 (2003); Est. of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs., 204 N.C. App. 338, 341, 694 S.E.2d 405, 408 (2010).

The City has not waived governmental immunity. See Hewett Decl. [D.E. 44-1] ¶ 7. "The City does not participate in a local government risk pool, or any other form of risk pool." Id. at ¶ 15. The City has a retained limit policy which provides "no coverage unless and until the City has paid the full amount of its . . . Retained Limit." Id. at ¶ 10; see Cox v. Lamm, No. 4:20-CV-52, 2020 WL 5097832, at *4 (E.D.N.C. Aug. 28, 2020) (unpublished) (collecting cases) ("[E]xcess liability insurance coverage over a municipality's self-insured retention amount does not waive governmental immunity."). Moreover, Harris's claims against Biggerstaff in his official capacity are functionally brought against the City and are duplicative. See Graham, 473 U.S. at 165–66; Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004); Howard v. City of Durham, No. 1:17-CV-477, 2018 WL 1621823, at *8 (M.D.N.C. Mar. 31, 2018) (unpublished); Hill v. Robeson Cnty., 733 F. Supp. 2d 676, 682 (E.D.N.C. 2010). Thus, the court grants the motion to dismiss, and dismisses counts three through five of the amended complaint against the City and Biggerstaff in his official capacity.

3.

"North Carolina is one of a small minority of jurisdictions that . . . recognizes a civil cause of action for obstruction of justice." Braswell v. Medina, 255 N.C. App. 217, 229, 805 S.E.2d 498, 507 (2017) (emphasis omitted). The Fourth Circuit has repeatedly held that North Carolina would not "recogniz[e] a common-law obstruction of justice claim against a police officer for his actions relating to a criminal proceeding." Evans v. Chalmers, 703 F.3d 636, 658 (4th Cir. 2012); see Massey v. Ojaniit, 759 F.3d 343, 358 (4th Cir. 2014); cf. Jones v. City of Durham, 183 N.C. App. 57, 59, 643 S.E.2d 631, 633 (2007). Accordingly, the court dismisses Harris's obstruction of justice claims against the defendants. See Massey, 759 F.3d at 358; Evans, 703 F.3d at 658; Houck v. Howell, No. 5:14-CV-00187, 2016 WL 1599806, at *9 (W.D.N.C. Apr. 21, 2016) (unpublished); Haynes v. City of Durham, No. 1:12CV1090, 2014 WL 2864470, at *10 (M.D.N.C. June 24, 2014) (unpublished); Braswell, 255 N.C. App. at 234, 805 S.E.2d at 510; see also. Calliste v. City of Charlotte, __ F. Supp. 3d __, 2023 WL 6367672, at *15 (W.D.N.C. Sept. 28, 2023). Harris's citation to Jones v. City of Durham, 168 N.C. App. 433, 608 S.E.2d 387, aff'd, 360 N.C. 81, 622 S.E.2d 596 (2005), opinion withdrawn and superseded on reh'g and decision rescinded in part based upon dissenting opinion, 361 N.C. 144, 638 S.E.2d 202 (2006) (per curiam), see [D.E. 47] 22–23, does not alter this conclusion. See Howard, 2018 WL 1621823, at *6; Braswell, 255 N.C. App. at 233–34, 805 S.E.2d at 509–10. Accordingly, the court dismisses count three of the amended complaint.

4.

To establish a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) that the defendant engaged in extreme and outrageous conduct; (2) that the conduct was intended to cause severe emotional distress; and (3) that the conduct in fact caused severe

10

emotional distress." Sasser v. City of Whiteville, No. 7:10-CV-95, 2010 WL 4809039, at *2 (E.D.N.C. Nov. 18, 2010) (unpublished); see Turner v. Thomas, 369 N.C. 419, 427, 794 S.E.2d 439, 446 (2016); Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992); Dickens v. Puryear, 302 N.C. 437, 452–53, 276 S.E.2d 325, 335 (1981).

To be considered "extreme and outrageous," the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quotation omitted); see Turner, 369 N.C. at 427, 794 S.E.2d at 446; West v. King's Dep't Store, Inc., 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988). "The liability clearly does not extend to mere insults, indignities, [and] threats." Wagoner v. Elkin Cnty. Schs.' Bd. of Educ., 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994). North Carolina "has set a high threshold to satisfy this element." Turner, 369 N.C. at 427, 794 S.E.2d at 446 (quotation omitted). Whether conduct is sufficiently outrageous is a question of law for the court. See Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Harris has failed to state a claim of intentional infliction of emotional distress against the moving defendants based on the criminal investigation of Fambro. Compare Hensley v. Suttles, 167 F. Supp. 3d 753, 768–69 (W.D.N.C. 2016), aff'd sub nom. Hensley ex. rel. North Carolina v. Price, 876 F.3d 573 (4th Cir. 2017), and Needham v. Price, 368 N.C. 563, 566–67, 780 S.E.2d 549, 551 (2015), with Kifer v. Crow, No. 3:21-CV-039, 2023 WL 5192113, at *11 (W.D.N.C. Aug. 11, 2023) (unpublished), and Turner, 369 N.C. at 428–29, 794 S.E.2d at 446–47. Accordingly, the court dismisses count four of the amended complaint.

5.

"As a matter of North Carolina law, a municipality [cannot] be a party to a conspiracy."

11

Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7, 2018 WL 1801417, at *5 (E.D.N.C. Apr. 16, 2018) (unpublished); see White v. City of Greensboro, 532 F. Supp. 3d 277, 332 (M.D.N.C. 2021), on recons. in part, 586 F. Supp. 3d 466 (M.D.N.C. 2022). And "without sufficiently alleged wrongful acts [by the moving defendants], the conspiracy claim cannot survive." Massey, 759 F.3d at 358; see White, 532 F. Supp. 3d at 332; cf. Grant v. High Point Reg'l Health Sys., 184 N.C. App. 250, 255, 645 S.E.2d 851, 855 (2007). Accordingly, the court dismisses count five of the amended complaint against the moving defendants.

6.

In light of the dismissal of Harris's federal claim, the court declines to exercise supplemental jurisdiction over his state-law claims against NCSP and Fambro and dismisses without prejudice his remaining state-law claims against NCSP and Fambro. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

III.

In sum, the court GRANTS the motion to dismiss [D.E. 44] and DISMISSES the action WITHOUT PREJUDICE. The court DISMISSES WITH PREJUDICE the Fayetteville Police Department.

SO ORDERED. This 21 day of February, 2024.

JAMES C. DEVER III
United States District Judge